**Kimberly James BOND, Plaintiff**

v.

**Harold P. SMITH and Carl R. Hampf, As Executors of the Estate of Arthur Gernt Bond, Deceased, Defendants.**

No. 95–D–276–E.

United States District Court,
M.D. Alabama,
Eastern Division.

May 23, 1995.

---

**132**

James B. Sprayberry, Auburn, AL, for plaintiff.

Henry A. Callaway, III, Mobile, AL, for defendants.

## MEMORANDUM OPINION

De MENT, District Judge.

This matter is now before the court on the plaintiff, Kimberly James Bond's, motion for preliminary injunction and the defendants Harold P. Smith's and Carl R. Hampf's motion for summary judgment, filed March 6, 1995. The plaintiff responded to the defendants' motion for summary judgment on March 20, 1995. For the reasons set forth below, the plaintiff's motion for injunctive relief is denied and the defendants' motion for summary judgment is due to be granted.

### Jurisdiction

The court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332, as complete diversity exists between the parties to this action and the amount in controversy exceeds $50,000.00. Jurisdiction is further founded upon the provisions of 28 U.S.C. Section 1441, as this case was removed from the Circuit Court of Lee County, Alabama to the United States District Court for the Middle District of Alabama, Eastern Division.

### Factual Background

This case involves a dispute between the executors of the estate of Dr. Arthur Gernt Bond and Kimberly James Bond. The plaintiff is the decedent's widowed daughter-in-law and legatee under his will. Prior to his death, Dr. Bond guaranteed a debt belonging to his son (now deceased) and daughter-in-law which arose from the purchase of a home in Lee County, Alabama. The guaranty was extended to the Auburn National Bank in March of 1991. Following the extension of the guaranty, the plaintiff and her husband executed a note to Auburn National Bank in the amount of $157,589.93. The note was secured by a mortgage on the house and the thirty acres of land it is situated on.[1]

Presently, the note is in default because of the plaintiff's inability and/or refusal to make her mortgage payments. Dr. Bond is now deceased, and Auburn National Bank has therefore filed a claim against the estate for the remaining balance of $136,398.54 based on Dr. Bond's guaranty. The claim was filed on July 14, 1994, in the Chancery Court of Williamson County, Tennessee.

Dr. Bond was a resident of Williamson County until his death on April 12, 1994. His last will and testament was admitted to probate in that same county on April 20, 1994.[2] Pursuant to Article Three of the will, two residuary trusts are to be established following the administration of the estate. The first trust is to provide support for the decedent's daughter, Jenny Katherine Bond, and the second trust is to provide support for the decedent's minor grandson, Arthur Gernt Bond, III and the plaintiff. The second trust is also to provide income for the decedent's cousin, Janet Rowe Johnson.

After the estate was opened in Tennessee, the executors and the estate's attorney took steps towards paying the scheduled payments on the note secured by the subject mortgage and making payments to the plaintiff under the second residuary trust. The estate distributed $3,000.00 per month to the

---

1. Following the death of Arthur Gernt Bond, Jr., the home and property passed by right of survivorship to his wife, Kimberly Bond. The Plaintiff is now the sole owner of that property.

2. To enable the executors to access property owned by Dr. Bond in Baldwin County, Alabama, the will was also admitted to probate in an ancillary proceeding by the Probate Court of Baldwin County.

plaintiff from May 1994 to August 1994 and paid monthly installments of approximately $1,400.00 on her mortgage note from May 1994 to September 1994. However, on June 21, 1994, a medical malpractice lawsuit was filed in the Circuit Court of Davidson County, Tennessee against the Bond estate. The amount claimed in the suit is $3.5 million dollars. The malpractice claim and the claim filed by Auburn National Bank exceeds the amount of available insurance and the assets of the estate. Thus, relying on Tennessee Code Section 30–2–317(d), (which, the defendants argue requires an executor to set aside funds to pay an uncontested or unmatured claim until it is determined whether or not such claim is to be paid) the estate has discontinued the provision of monthly payments for the plaintiff's upkeep and mortgage payments.

In an effort to resolve the plaintiff's problems with Auburn National Bank, the executors and the estate's attorney have proposed various solutions which would enable her to keep her home. First, the estate's attorney has attempted to negotiate an indemnity agreement with the plaintiff under which she would agree to repay additional amounts advanced to her and the Bank if the malpractice action reached the assets of the estate. Second, the estate has suggested the possibility of purchasing the debt from the Bank so that foreclosure could be avoided while the malpractice case is pending. Under this proposed solution, the note and mortgage would in effect be substituted as assets of the estate for the funds required to purchase the note and mortgage. The plaintiff has rejected both suggested solutions. Moreover, the second proposal, outlined above, is the subject of the plaintiff's request for a preliminary injunction.

*Request for Declaratory Judgment*

█ In her complaint, the plaintiff requests that this Court afford her declaratory relief by ordering the defendants to immediately pay off the balance of her note and mortgage to Auburn National Bank. Additionally, the plaintiff asks that this court declare that the estate's rights as surety of her debt be ignored and that she be given the subject property without restriction. The Court cannot honor either request under the law that is applicable to this case.

To begin with, the defendants are prevented under both Tennessee and Alabama law from paying off the Bank's claim against the estate (for her sole benefit) in preference over the other claims against the estate. Section 30–2–317(d), Tenn.Code Ann., specifically provides that the executors of an estate must set aside sufficient assets to pay a contested claim until the claim is disposed of:

> "The personal representative shall hold aside sufficient funds or other assets to pay each contested or unmatured claim (or the proper ratable portion thereof, as the case may be) with interest (if the claim be one bearing interest), until such unmatured claim has reached maturity, also sufficient assets to meet the expenses of pending litigation and costs of court and any unpaid taxes."

In addition, the law in Tennessee is equally clear that an executor cannot pay a legatee until the claims against the estate have been paid or, at least, provided for:

> *Distribution of balance—Final settlement.*
>
> Upon the payment of all claims which are not contested and *upon provision being made* for expenses of administration, obligations on account of taxes and assessments which have not been settled, claims not due and *undetermined contested claims,* together with costs and expenses of litigation, the personal representative shall pay any balance remaining in the personal representative's hands to the distributees or legatees entitled thereto....

Section 30–2–701, Tenn.Code Ann. (emphasis added).

The law is essentially the same in Alabama. See Section 43–2–370, Code of Alabama, 1975 (all property of the estate is subject to the estate's debts); Section 43–2–371, Code of Alabama, 1975 (order of preference); Section 43–2–580, Code of Alabama, 1975 (payment of legacy cannot be compelled unless the estate's assets are sufficient to pay its debts).

Clearly, the defendants are in no position to deplete the limited resources of the estate

for the sole benefit of the plaintiff given the size of the claims currently filed against the estate. To do so would needlessly expose the estate, and, more importantly, the executors themselves, to liability in the event of a shortfall. While the executors have done their best to provide the plaintiff with the support she needs, there is little that they can do now short of purchasing the note and making it an asset of the estate until such time as the claims against the estate are settled.

The Court also finds, that a purchase of the note and mortgage by the estate does not destroy the rights of the estate as guarantor and surety of the plaintiff's debt to the Auburn National Bank. Section 8–3–2, Code of Alabama, 1975, provides in part that "a surety who has paid its principal's debt is entitled to a transfer of the original and collateral security which the creditor holds...." Whether the estate pays off the plaintiff's debt in its capacity as a surety or purchases the note and mortgage outright is immaterial. In either case, the estate is entitled to treat the subject property as an asset of the estate.

■ The Court is further unimpressed by the plaintiff's claim that she is entitled to the subject property without restriction following payment or purchase of her debt by the estate because of a clause in the decedent's will which is commonly referred to as a "debt forgiveness provision." That provision states the following:

"C. *Bequest to Kimberly Jane Bond.* I give and bequeath unto KIMBERLY JANE BOND any and all debts and obligations owed to me by KIMBERLY JANE BOND at the time of my death whether represented by notes or otherwise."

*Last Will and Testament of Arthur Gernt Bond,* Article Second, paragraph C.

Perhaps that provision will be interpreted to mean that the debt the plaintiff legally owes to the Auburn National Bank will be treated as a debt owed to the estate once it pays or purchases the debt in its capacity as guarantor. However, that finding will not be made by this Court. The Chancery Court of Williamson County, Tennessee is obligated to

pass on that matter at a later time. For now, this Court has not been directed to any authority which would allow it to find that the estate must pay or purchase the debt of the plaintiff yet not have the right to retain the subject property as an asset of the estate.

## Request for Injunctive Relief

As stated previously, the plaintiff wishes to enjoin the defendants from purchasing the note and mortgage on her property from Auburn National Bank. From reviewing the materials submitted by the plaintiff, it appears that she is operating under the assumption that the executors are more likely than the Bank to foreclose upon her property if they hold the mortgage. However, at the same time, the plaintiff demands in her complaint that the estate, in its capacity as a surety, pay the balance due to the Bank.

In response, the defendants maintain that they are prevented under both Tennessee and Alabama law from paying off the Bank's claim against the estate (for her sole benefit) in preference over the other claims against the estate. Further, the executors contend that their suggestion that they purchase the Bank's note and mortgage was made in order to prevent foreclosure. As the surety of the debt, they argue that their payment of the plaintiff's debt would entitle them to the property where they paid voluntarily (as plaintiff requests) or involuntarily. Thus, they contend that a preliminary injunction is not called for under the law. This Court is inclined to agree.

A preliminary injunction is extraordinary relief. *Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir.1994). Because of that fact, a party seeking such relief must demonstrate that the following factors exist: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) [her] own injury outweighs the injury to the nonmovant; and (4) the injunction would not disserve the public interest." *Cuban American Bar Association, Inc. v. Christopher,* 43 F.3d 1412, 1424 (11th Cir. 1995). In this case, the plaintiff's request for injunctive relief fails because there is not a substantial likelihood of success on the mer-

its and there is no showing that the plaintiff is threatened by irreparable injury at the hands of the defendants.

■ As outlined above, the defendants have two duties to grapple with in this situation. First, they are obligated to treat the claim filed by the Auburn National Bank as one of the many valid obligations owed by the estate. Second, the law requires that the executors retain sufficient estate assets to meet those obligations and contested claims. Because of these two competing duties, the defendants' only real option is to purchase the note and mortgage from the Bank and include it in the estate's assets. The Court is mindful of the fact that the estate is not required to help the plaintiff in this way. For this reason, the Court is confounded by the plaintiff's unwillingness to work with the defendants when they are trying desperately to save her home with the limited resources available to them. Accordingly, the Court finds that the plaintiff is not threatened by irreparable injury and is thus, not entitled to the equitable relief she seeks. The defendants may proceed with the proposed purchase of the note and mortgage.

### Request for Quiet Title

The plaintiff also requests in Count 1 of her complaint that the Court quiet title as to the property in question. However, the plaintiff has made no showing whatsoever that any party has made a claim to her title apart from the Auburn National Bank. Further, the defendants have denied having any claim to the subject property apart from the interest that the estate would claim when it purchases the note and mortgage. Therefore, the plaintiff's claim is moot and the defendant's are entitled to summary judgment as to this final claim as well.

### Conclusion

In sum, the defendants' motion for summary judgment is due to be granted and the plaintiff's request for injunctive relief is due to be denied.